Good morning, your honors. May it please the court, my name is David Don. I'm here to represent David Bodley, the plaintiff appellant in this matter. Again, as was the last case called, this case focuses on the issue of standing under Title III of the ADA. We ask that this court reverse and remand this case. The district court granted summary judgment to the defendant, finding that Mr. Bodley lacked standing. However, it's our position that the district court applied the incorrect test for standing to determine standing under Title III of the ADA. Lujan sets forth, is the controlling precedent, sets forth that any injury under Title III must be both actual or concrete and particularized to the individual, as well as be either actual or imminent. Your Honor, in the Pickering case in the Ninth Circuit showed us how the Lujan requirements of Title III can be satisfied by Article III, can be satisfied by Title III plaintiffs, and that is by showing that the plaintiff has encountered an architectural barrier and as a result of that barrier is deterred from frequenting the public accommodation. That would be enough for standing in a damages suit, but of course damages aren't available under the statute, so you need enough injury prospectively in order to support injunctive relief, correct? That is correct. Okay. And to satisfy that aspect, the actual or imminent aspect, I believe, of Article III, we presented evidence to satisfy that as well. Mr. Bodley testified in his deposition and in an affidavit submitted in opposition to summary judgment motion that he plans to intend or that he intends to return to the resort hotel in question. I'm just looking at his affidavit because this is what I wanted to ask you about. Yes, sir. On his deposition, which I guess I'm not sure which excerpts of record it is, but I think it's 136 of the excerpts of record. He was asked, okay, do you have any plans to return to the Scottsdale Plaza Resort? Answer. It's possible. I mean, if it was handicap accessible, I was going to go there. I would possibly hold a yearly meeting there. Possible. So what do we do with possible? Okay. What do we take from that? What Mr. Bodley said was then, that question, incidentally, was never, there was never any follow-up questions to that. Well, that's his answer. What he said. You know, the question was pretty clear. The answer was pretty direct. It's possible. Right. And my response is that the conditional aspect of his answer was conditional only upon the injury that he was suffering. In other words, he was saying that he would return or it would be possible for him to return to the property if it were made ADA compliant. In his affidavit, it's at the record at 48, he indicates not a someday intention as the district court judge intended, but rather a specific date that he would return in September 2008 and every year thereafter, if necessary, to see if it were suitable for his annual meeting. And then if it were, he would stay there in November 2008. Now, this is, let me ask you, at this stage in the litigation, is the judge allowed to decide who she believes? That's to say, if the judge believes this statement, I'm now reading the affidavit, although it's possible for me to return, although it is impossible for me to plan returning to Scottsville Plaza because of its barriers. If barrier removal is completed, I intend to return to the facility in September 2008 and every year thereafter, if necessary, to see whether it is a suitable location for our annual meeting. If so, I intend to make a reservation to stay there in November 2008. This has been my intent. Now, there's a fair amount of evidence in the record, particularly coming out of his own depositions, that would enable the district judge to disbelieve this. At this stage of the litigation, does the district judge get to do fact-finding as to whether she believes it or not? Absolutely not. When do we do fact-finding as to whether or not it's true? This motion and this order came out of a summary judgment motion where the case law is very clear that credibility decisions about whether to believe one statement or not is improper for the court to make. But I'm asking a slightly different question now. Okay. When do we get to decide whether or not it's true? Does the district judge have to put this off until the very end of the litigation? Does the district judge have to save this for the jury? I mean, when do we do fact-finding on the jurisdictional question as to the likelihood that he actually will return or his intent to return? I think that's a question for the trier of fact, and that question can be submitted to the jury or the judge if it's a bench trial. So if this is a jury trial, we can take evidence. But so long as they're disputed questions of fact, we can't resolve whether there's jurisdiction of this to say whether there's Article 3 standing until the jury makes up its mind after we've had the trial? Is that what the law is? On this one, often I ask, I kind of have a notion of what the law is. On this one, I'm actually puzzled on the question. Well, does the judge have to accept self-serving allegations made by the parties? I think there's no obligation to accept self-serving allegations by the parties. However, there's also not and there's also a concurrent obligation not to make credibility determinations. It's not credited. It's a self-serving statement. I just reject it. I'm sorry. I did not hear you at the question. It's a self-serving declaration and I just reject it. I'm not talking about credibility. I just reject it because it's a clearly self-serving declaration. I don't have to account for it. I think a judge has that option. In this case, however, that's not a fair characterization of the declaration in this case because there's not any inconsistency with the deposition testimony. The conditional aspect of Mr. Bodley's intent to return is only upon the removal of the architectural barriers that are the very injury complained of in this case. Well, there is other evidence. For example, when he was ill and they held their meetings at Scottsdale, they held them in his office, in his building. And any time he was not ill and they held a meeting, they held it someplace where they could have a nice vacation, namely Buena Park, California. Well, the evidence in this case about the location of the annual meeting was limited to a three-year period, I believe, where Mr. Bodley was the person in the company responsible for booking the location of the annual meeting. That's not a sufficient basis to determine and to conclude in the future that he would not stay in the hotel. And it's also contrary to his declaration where he indicated that he was impressed with this resort and impressed with the location in particular because of its proximity to his mother's home and to his own home. And he was otherwise impressed with the amenities at the hotel. Let me return to my question. Judge Hall's question or line of questioning is premised on this is suitable for summary judgment because in light of all the evidence that's in front of us, this declaration at the end of the affidavit simply is not credible. That's to say, on the summary judgment standard, yes, he can say it, but it really doesn't give a material issue of fact because what else is in the record? That's one approach, and I may well be the right one on this record. But my question is a different one. Assuming for the moment, although I'm not yet decided whether I'm going to go this way, assume for the moment that there really is a material issue of genuine fact as to whether or not he intends to return. You said, well, that's a question of fact to be resolved by the jury if it's a jury trial. What case law do you have that says that we've got to postpone the Article III jurisdictional determination until the end of trial in a jury trial as to whether or not it's true that he actually will? Do you have case law? I don't. The only case law I'm aware of on the issue is the district court can raise the issue sua sponta at any point of the litigation. But I'm trying to figure out, number one, when does it happen, and number two, who decides it? Okay. Okay. Isn't that what basically happened in Dalil? I think on Dalil. Dalil. It happened. They had signed a settlement agreement in the district court. There was a motion for an attorney's fees award, and the district court was presented with that motion and said, ah, I have a question here about whether or not we even have standing and whether this court even has jurisdiction. And she said, I'm going to conduct an evidentiary hearing. And she did that. She conducted a full-blown evidentiary hearing, took witnesses, made findings of fact, and said there's no standing. And then denied and then just basically said, you know, there's no basis for an award of an attorney's fees under those circumstances. But let me ask you a question. Following up on what Judge Hall said about the affidavit, one way I look at this is that there was a deposition here where he made certain statements. It was under oath. And then the motion for summary judgment is filed, and his affidavit seems to go, I don't know if it contradicts, but it's in addition to his deposition, and it seems to, as Judge Hall says, it seems to serve his purposes. As most party affidavits do. Yeah. So, but did the district court say, make a finding that it was a sham declaration? No. No. The district court did not utilize the analysis set forth in Pickering and Doran, you know, identifying that the injury aspect was the deterrence, and the actual and imminent aspect of the injury in fact requirement was the continuing deterrence from revisiting the property. But that analysis was not done. Because we do, like Judge Hall was saying, we do have, at least it was my understanding from my days as a district court judge, that you can't submit a declaration that contradicts your deposition testimony for purposes of raising a genuine tribal issue of fact. And the district court judge could say, you know, this is nothing but a sham, you know, and it's basically I'm going to completely disregard it and I'm only going to look at what you said in your deposition. And that's it. That did not happen in this case. That didn't happen here? No, sir. Okay. Let's hear from the other side. May it please the Court. My name is Kim Alvarado and I represent the Scottsdale Plaza Resort LLC. I actually do agree with Mr. Don on this issue. That did not happen in the trial court. If you look at the trial court's opinion, she assumed that everything that Mr. Bodley was saying was true. The problem is what he was saying wasn't enough to meet the Lujan standard. Your Honor, you quoted from page 79 of his deposition. The district court actually then goes on, look at page 80. Hold on, hold on. Just a second. And this is directly in her ruling. Okay. Okay. Lines 11 through 14. Lines 11. I read on page 79 and then, okay. Oh, yeah. I'm sorry. Yeah, it's like it's in the condensed. Lines 11 to 13, he says. Because I was asking questions about, you know, coming back for this annual meeting. He had already said in his, well, he says later in his deposition, page 95, the only reason he would ever go back to the Scottsdale Plaza Resort or any other hotel in there was for this annual meeting slash family vacation that he has every year. Other than that reason, he has no reason to go back. So what he says at his deposition to page 80, lines 11 through 13, is if the facility was accessible and I was happy with it, I would possibly look into it for a meeting for the following year, yes, in 2008. And then he repeats that exact phrase. So I don't think his affidavit's a sham at all. He actually repeats it. He says the same thing again in his affidavit at paragraph 6. He says, if barrier removal is completed, I intend to return to the facility in September 2008 to see whether it is a suitable location for our annual meeting. If so, I intend to make reservations to stay there in November 2008. And that's exactly that paragraph in the affidavit the district court also quoted. And so what she was saying was, all I have on this record is someone who says, if you make it ADA compliant, I'll go back, and then I'll figure out whether this is actually a place my family would want to come or not. Maybe it's not. Listen carefully because this is a trick question. Oh, no. I think you've just conceded that he has stated that he's coming back, and you've premised your argument on the fact that he is coming back. He's coming back to look at the facility to see whether it's ADA compliant to look into whether he would make a reservation. Okay. Where is it in the law that when he comes back, he has to be coming back for the purpose of staying there? That is, why is it not enough that he comes back, he encounters obstacles as he tries to use the bathroom or come up the ramp in order to see the rest of the facility? He's come back. You've stated that he's coming back. Why, for purposes of standing, does he need to come back and stay there, have his daughter's wedding there, have the annual meeting there? Why isn't it enough that he comes back and he encounters the obstacles? Well, I've actually never seen any case law at all where they've said that you can't look at the function of what that public accommodation does and why people are going there in the first place. All the cases, in fact, when they distinguish between a fast food restaurant versus a hotel, they distinguish between, well, in a fast food restaurant situation, you're not really making plans to do that. It's usually just a spontaneous, you pop in, versus a hotel, you actually have to stay there. What you're saying is just people off the street are going to come in and use the bathroom and leave. No, I'm saying I'm not talking about people generally. I'm talking about him. We've now accepted, at least for purposes of the argument you made, you may want to back off of it depending on where this goes. You said we know he's coming back. I don't challenge the fact that he's coming back. He's coming back in order to see whether they've complied. Now, why isn't that enough? He is coming back, and what he said he's going to do, he's going to see whether he's going to comply. Well, I think that means he's going to go up the ramp, he's going to go into the bathroom, and if they haven't complied, he's going to run into obstacles. Why is that not enough? First of all, I disagree with the first part of your question, which is he stated enough to say he's coming back, because the district court did go through. You're now backing off from what you just said, because you previously said, well, of course, it's all consistent. He said he's coming back, but only if it's compliant will he come back and stay. No, I was saying that in the context of you. The court was questioning whether the district court in this case was making credibility determinations of this plaintiff. And I was saying in this section of her order, she quotes kind of a supposition at page 80, and it's from his affidavit, and says his statement that I'm going to come back and then see if it's suitable for what we do, because he has his grandkids flying in. In the past, they've gone to Knott's Berry Farm. None of that's here. Whether it's even something we'd be interested in. She was saying under Lujan, she didn't think that was enough. Yes, we did challenge whether he would come back. That was another big, huge part of her order. I don't think you've conceded whether he will or will not. But I'm still working on this question, and maybe you don't have an answer for it. I'm trying to figure out why it's not enough for purposes of future encountering of the obstacles that he comes back in order to see whether the obstacles are gone. Why isn't that enough? Well, there is no case law, I would say, either way on that. All I can say is the case law has always looked at the person's future intent to return based on the function of that public accommodation and the services offered and why the person would be coming back. I have never seen a case. That's the question, why the person is coming back. And I think the question usually is in terms of coming back to patronize the place. Right. Because otherwise then Not to look at it, but coming back as a patron. Right. Because then I would think then, I mean, I know we have this ADA tester issue out there, but we would essentially just create and institutionalize these roles of ADA tester because now they would have, if we brought in standing to that extreme, then we would simply say people can just say I want to come back to see if you're ADA compliant, but I have no intent to actually use the facility, access it, or anything like that. This may take you beyond the argument that you thought about, but there's a long line of cases in the old blacks go in the back of the bus era where blacks would be testers. They would get on the bus in the particular municipality. They've never ridden the bus in that municipality again. They get on the bus only for the purpose of being told you have to sit in the back. Once they're told they have to sit in the back and forced to ride in the back, they bring a lawsuit. And the only reason they got on that bus was to be a tester. And they had standing to do that. Article III standing. For purposes of Article III, why is it not enough that they came only to make the test as to whether or not it's accessible? I think That line of cases is just not applicable? I don't think that's No. Well, I don't know. But all I know is in the ADA context, the courts have always looked at the reason for the person going there because it's also tied into the barriers that they claim to have encountered and whether those barriers prohibit their use of the facility. So it has to be dependent on what that facility's function is. But going back to the other issue, there was also That may be the right answer. And going back to your other question about was there a dispute about whether he intended to come back. Yes. I mean, there was no factual dispute here because the problem is the defendant, excuse me, the plaintiff didn't put in any evidence for the district court. Well, drawing inferences, in summary judgment, you're supposed to draw all inferences, all reasonable inferences in favor of the nonmoving party. Right. And in this case, she did that. The problem is here, what do we look at? Well, so, you know, in DeLille, we said, in order to show the actual and imminent nature of her injury, for purposes of Lujan constitutional standing, then DeLille must demonstrate her intent to return to the Santa Barbara area. Upon her return, her desire to stay at the Best Western and SENA. So those two things. If it is made accessible. Right. Exactly. And then in the letter brief I submitted last month, I went through in detail how all the evidence that was presented in DeLille, both as to that plaintiff's intent to return to the Santa Barbara area, again, to stay overnight. I mean, that's what's in that record. In addition, her intent to stay at that Best Western. And that record contained detailed evidence about why that Best Western was better than any other place, both its location to the freeway, its price compared to other places, the number of accessible rooms it had compared to other places. She liked the quilts on the bed. There was evidence in that. I mean, that case goes on for pages. Here, what is there? I mean, Mr. Don said that he liked the amenities. What evidence in the record is there about the amenities? You know, what may save you from my line of questions is, as I read the declaration, he doesn't say, I'm coming back to be a tester. He says, I'm coming back to see if it's okay. And if it's okay, then we'll hold our board meeting. If I'm happy with it. And for good reason, I think. The district judge says, Maloney, you're not going to hold your board meeting in Scottsdale. You've always held them at, quote, fun resorts. Scottsdale is 16 miles from your home. I just don't believe it. So she then, I think by inference, by sort of inference from her order, she doesn't believe he's coming back to see whether or not it's been fixed so that he can decide whether to have a board meeting. Frankly, I think her reading doesn't raise my question. Okay. I think there was enough evidence in this record, and I'll stop. Again, what he put in this evidence, this hotel was built in 1976. He's lived in Arizona for 47 years. So he's been around while this place has existed for 31 years. He's never been there. He's never heard of it. She looked at all those factors in considering whether he had, whether there was evidence from which she could decide that there was a genuine issue of fact about whether he was going to return. In summary judgment, even if the other side comes back with some evidence, the district court can say this evidence is so de minimis. It's either no evidence or insufficient. No tribal issue fact would ever agree with the proposition being advocated, the factual proposition being advocated. Therefore, summary judgment as a matter of law is appropriate. I agree with that. And all that, I mean, we can all read these ADA cases, so we're blown in the face. I have never seen a factual attack to a standing claim on these type of facts where standing was found. I mean, this would be stretching standing. In my opinion, it would be basically eliminating the requirement altogether, because now anyone could have it. Thank you. Anything further you say might further endanger your case. I think you're doing just fine where you are. Would you like a minute? Thank you. There's no requirement that an ADA plaintiff under Title III actually purchase something, stay at a hotel to – in order to have standing. This Court in Malski v. M.J. Cable reasoned in part that part of what the ADA is designed to do is designed to open up the array of service options available to the non-disabled community to the disabled community. Mr. Bodley has the right to examine the property to see whether or not it is suitable for either it is in ADA compliance and to decide in the same manner as other people to determine whether it is suitable for location for his annual meeting. The amicus in this case noted that the resort here is not – and it does not advertise merely to out-of-town residents. It also advertises locally. There are many reasons to attend and to encounter barriers at this resort. Thank you very much. Take both sides. Interesting arguments. Bodley v. Plaza Management now submitted for decision. And we are in adjournment for the day, for the week, for the month.
judges: Hall, Fletcher W. , Paez